*16*

FILED

NOV – 8 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

# NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                    )     Case No. 06-10598-B-13

Aurelio Barajas and      )     DC No. RF-1
Celia J. Ramirez Rodriguez,  )     DC No. RF-2

     Debtors.        )

**MEMORANDUM DECISION REGARDING CREDITOR'S
MOTION TO DISMISS, MOTION FOR RELIEF FROM THE
AUTOMATIC STAY, AND OBJECTION TO EXEMPTIONS**

**This memorandum decision is not approved for publication and may not be cited
except when relevant under the doctrine of law of the case or the rules of res
judicata and claim preclusion.**

Ralph Friesen, appeared pro se ("Mr. Friesen").

Peter B. Bunting, Esq., appeared on behalf of the debtors, Aurelio Barajas and Celia J.
Ramirez Rodriguez (the "Debtors").

M. Nelson Enmark, Esq. appeared in his capacity as the chapter 13 trustee (the "Trustee").

     Before the court are Mr. Friesen's motion to dismiss (the "Dismissal Motion"),

motion for relief from the automatic stay (the "Stay Relief Motion"), and objection to

exemptions (the "Objection to Exemptions").[1]  Mr. Friesen holds an unsecured claim for

personal injuries sustained in an automobile accident.  These matters were argued to the

---

[1]Mr. Friesen also objected to confirmation of the Debtors' first modified chapter
13 plan.  That plan has been withdrawn and replaced with a second modified plan set for
confirmation hearing on November 16, 2006.  The court will rule separately on Mr.
Friesen's objection to confirmation of the second modified plan after the hearing.

*87*

1  court and taken under submission at different times.  For the reasons set forth below, the

2  Dismissal Motion and the Stay Relief Motion will be denied.  The Objection to

3  Exemptions will be overruled.

4      The court has jurisdiction over these matters under 28 U.S.C. § 1334 and 11

5  U.S.C. §§ 109(e), 362 and 522,[2] and General Orders 182 and 330 of the U.S. District

6  Court for the Eastern District of California.  These are core proceedings pursuant to 28

7  U.S.C. § 157(b)(2)(A) & (G).  This memorandum decision contains findings of fact and

8  conclusions of law required by Federal Rule of Bankruptcy Procedure 7052, made

9  applicable to these contested matters by Federal Rule of Civil Procedure 52.

10  **Facts.**

11      In October 2004, Mr. Friesen was injured in a collision with an automobile driven

12  by co-debtor Celia Ramirez Rodriguez.  In February 2005, Mr. Friesen filed a civil

13  lawsuit in Fresno County Superior Court against Mrs. Rodriguez for personal injuries

14  resulting from the accident (the "State Court Litigation").  Also, in early 2005, the

15  Debtors refinanced their home with a loan in the amount of $104,000.  In July 2005, the

16  Debtors recorded a Declaration of Homestead for their home.

17      Mr. Friesen states in his pleadings that the State Court Litigation was set for trial

18  on May 1, 2006.  Debtors filed their petition for chapter 13 relief on May 8, 2006, before

19  the state court could render a decision in the State Court Litigation.  The State Court

20  Litigation was automatically stayed when the Debtors filed their bankruptcy petition.  The

21  section 341(a) meeting of creditors was concluded in June 2006.[3]

22

23

24      [2]Unless otherwise indicated, all chapter, section and rule references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy

25  Procedure, Rules 1001-9036, as enacted and promulgated on or after October 17, 2005,
the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of

26  2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

27      [3]Hereafter, all relevant events occurred in 2006, unless specifically stated

28  otherwise.

1  In their schedules, the Debtors listed secured debts in the amount of $103,040 and

2  unsecured debts in the amount of $36,935.81.  The Debtors listed Mr. Friesen as a

3  creditor holding an unsecured nonpriority claim in the estimated amount of $25,000 based

4  on, "Lawsuit against Celia Rodriguez for damages caused in an automobile accident on

5  10/26/04."  The Debtors' Schedule F also states the claim to be "unliquidated."  On

6  June  8, Mr. Friesen filed an unsecured nonpriority claim in the amount of $500,000 (the

7  "Friesen Claim").  Mr. Friesen has not alleged facts to show, nor has he sought a

8  determination, that the Friesen Claim is not dischargeable in chapter 13 under § 1328.[4]

9  This is the second bankruptcy petition filed by the Debtors in the past seven years.

10  On August 30, 1999, the Debtors filed a petition for chapter 7 relief (case number 99-

11  17784).  They received their chapter 7 discharge on December 9, 1999.  Under

12  § 727(a)(8), they are not eligible to receive another chapter 7 discharge until August 30,

13  2007.

14  **Issues Presented.**

15  Mr. Friesen has filed several pleadings in the form of motions and objections, with

16  overlapping issues, which the court addresses herein.  Specifically, Mr. Friesen moved to

17  dismiss this case on the grounds, *inter alia*, that the Debtors are not eligible for chapter 13

18  relief.  Mr. Friesen also contends that the Debtors have acted in bad faith for various

19  reasons discussed herein.  Mr. Friesen moved separately for relief from the automatic stay

20  to complete the State Court Litigation.  In addition, Mr. Friesen objected to the

21  exemptions claimed by the Debtors.  At a hearing on the Stay Relief Motion, the Debtors

22  indicated that they do not intend to object to the Friesen Claim.

23  / / /

24  / / /

25  / / /

26

27

28

[4]Under § 1328(a)(4), the court can deny discharge of a claim for "damages awarded in a civil action . . . as a result of willful or malicious injury by the debtor."

**Analysis.**

**Eligibility for Chapter 13 Relief under § 109(e).**

Mr. Friesen contends that the Debtors are not eligible for chapter 13 relief under § 109(e) because his $500,000 claim exceeds the eligibility limit. Section 109(e) provides: "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675 . . . may be a debtor under chapter 13 of this title."

Debtors do not contend that Mr. Friesen's claim is disputed, contingent or secured. Debtors listed the claim in their bankruptcy schedules as "unliquidated." But for the Friesen Claim, the Debtors appear to be eligible for chapter 13 relief. The issue, therefore, is whether the Friesen Claim was based on a "liquidated debt" at the commencement of the bankruptcy case.

In the Ninth Circuit, a debt is liquidated for purposes of calculating chapter 13 eligibility if the amount of the debt is readily determinable. *Slack v. Wilshire Ins. Co. (In re Slack)*, 187 F.3d 1070, 1073-75 (9th Cir.1999) (holding that "a debt is liquidated if the amount is readily ascertainable, *notwithstanding the fact that the question of liability has not been finally decided*." (Emphasis added.) The *Slack* court follows the decision in *In re Wenberg*, 94 B.R. 631 (9th Cir.BAP 1988) which held, "[t]he definition of 'ready determination' turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability." *In re Slack*, 187 F.3d at 1073-74, (quoting *In re Wenberg*, 94 B.R. at 634).

Mr. Friesen argues that his Claim is liquidated because the Debtors indicated, in opposition to his Stay Relief Motion, that they do not intend to object to the Friesen Claim. Mr. Friesen cites to the Black's Law Dictionary, which defines a liquidated debt as, "[a] debt whose amount has been determined by agreement of the parties or by operation of law." Mr. Friesen's argument is without merit. First, the offered definition of "liquidated debt" from Black's Law Dictionary does not fully reflect the Ninth Circuit's

1  definition of "liquidated debt" for purposes of chapter 13 eligibility.  Second, there is no

2  authority for the proposition that a failure to object to a proof of claim filed after the

3  commencement of a bankruptcy deems that claim to have been "liquidated" before the

4  bankruptcy was filed.  Presumably, the Debtors were motivated, in part, to seek

5  bankruptcy protection to avoid the cost and expense of having to defend the State Court

6  Litigation.  Their decision not to object to the Friesen Claim can be construed as an

7  economic and strategic decision, not an admission of liability.  Indeed, one bankruptcy

8  court has addressed this precise issue in *In re Solomon*, 166 B.R. 832, 837-38 (Bankr. D.

9  Md. 1994):

10  > Section 109(e) requires the determination whether a claim is contingent or
   > unliquidated to be made "on the date of the filing of the petition." 11 U.S.C. §

11  > 109(e). On the date of filing, the state tort claims had not been reduced to
   > judgment, and Debtor had not admitted an amount was due to the Creditors.

12  > Debtor's first response to the Creditors' claims was to schedule them in this case as
   > contingent and unliquidated, as well as disputed.

13

   > *Debtor's pronouncement that he would not object to the Creditors' claims in this*

14  > *case, thus allowing them to stand deemed allowed for purposes of his plan, did not*
   > *retroactively liquidate the claims as of commencement of the case*. Rather, the

15  > pronouncement constituted a recognition that no interest of Debtor was served by
   > objecting. The Creditors would receive all plan payments, regardless of what was

16  > determined to be the amount of their claims, and the expense of litigation was
   > likely to exceed what Debtor had concluded he should pay under his proposed

17  > plan. It would not improve the Creditors' distribution, further the Debtor's fresh
   > start, or be a productive use of judicial resources to require Debtor to pursue an

18  > objection that could not have a positive economic impact on the bankruptcy case,
   > just for Debtor to avoid loss of his Chapter 13 eligibility.

19

20  (Emphasis added.)

21      The Ninth Circuit Bankruptcy Appellate Panel ("BAP") recently wrestled with the

22  standard for what makes a debt liquidated for purposes of chapter 13 eligibility in *In re*

23  *Guastella*, 341 B.R. 908 (9th Cir. BAP 2006).  In that opinion, the debtor had been a

24  defendant in a state court lawsuit.  There had already been a trial on the complaint in that

25  case and the state court had issued a tentative ruling, holding the debtor liable in an

26  amount certain.  Consequently, the BAP opined, "[t]he 'extensive and contested

27  evidentiary hearing in which substantial evidence may be necessary to establish amounts

28  or liability' (*In re Slack*, 187 F.3d at 1073-74) had already taken place in the State Court."

1    *Guastella*, 341 B.R. at 917.  Therefore, the debt in that case was liquidated.

2         Here, the record fails to show that there has been an evidentiary hearing on the

3    merits of the Friesen Claim.  Mr. Friesen states that there was a trial in the State Court

4    Litigation on May 1, seven days before commencement of this bankruptcy case, but there

5    is no evidence in this court's record of such a trial, or of the outcome, tentative or

6    otherwise.  There is no evidence in the record to establish the amount of the Debtors'

7    liability other than the Friesen Claim itself.  Without admissible evidence in the record,

8    the actual amount of Mr. Friesen's damages is not "readily ascertainable."  Therefore, the

9    Friesen Claim is not liquidated and cannot be used in the calculation of chapter 13

10   eligibility.  The court is persuaded that the Debtors are eligible for chapter 13 relief under

11   § 109(e).

12   **Bad Faith**.

13         Mr. Friesen contends that the Debtors filed their bankruptcy petition in bad faith.

14   Specifically, he argues that the Debtors undervalued their home in their bankruptcy

15   schedules.  The Debtors estimate the value of their residence at $170,000 based on

16   information they obtained from Zillow.com, with an adjustment for "necessary repairs."

17   Mr. Friesen alleges that, "[a]n audit of this reference . . . reveals the value at $224,147."

18   Mr. Friesen also attached a printout of what appears to be an Internet web page from

19   Zillow.com as an exhibit to his motion.  As owners of their home, the Debtors may state

20   their opinion of its value under Fed.R.Ev.701.  The source of that opinion is not material

21   to its admissibility.  As a non-expert third party, Mr. Friesen's contention regarding the

22   property's value must be supported by competent and admissible evidence.

23         The problems with Mr. Friesen's argument on this point are twofold.  First, if Mr.

24   Friesen is offering this as evidence to impeach the Debtors' opinion regarding the value

25   of their home, he fails to establish (1) a foundation to show that his inquiry of Zillow.com

26   is based on the same information, and (2) that the date on which he based his inquiry of

27   Zillow.com corresponds with the date of the petition.  Second, if Mr. Friesen is offering

28   the results of his search with Zillow.com to prove that the house is actually worth

6

1  $224,147, then such evidence is inadmissible as both hearsay (Fed.R.Ev.802) and lacking

2  any foundation to establish its authenticity and accuracy. (Fed.R.Ev.901(a)). The court

3  cannot properly consider it.

4       Mr. Friesen objects to the fact that the Debtors obtained a 2005 income tax refund

5  in the amount of $1,850 and sold an old automobile for $400 and did not list the

6  disposition of those monies as "discretionary spending." Mr. Friesen is essentially

7  arguing that the Debtors failed to disclose material information in their schedules and that

8  they have distorted their income for purposes of confirming a chapter 13 plan. The court,

9  however, is unaware of a requirement to disclose such information as "discretionary

10  spending." Debtors facing serious financial difficulty commonly have to use available

11  cash on hand, such as an income tax refund, in an effort to avoid bankruptcy and to pay

12  for basic living expenses. This is not *per se* an improper use of the cash. There is no

13  evidence as to when they received these monies in relationship to the bankruptcy filing.

14  The amounts at issue are minimal. The Trustee conducted the 341(a) and performed his

15  own investigation of this case, and has raised no issues with regard to the Debtors'

16  schedules or the use of monies obtained prior to the bankruptcy. Any issues with regard

17  to the Debtors' actual "disposable income" will be considered in relationship to

18  confirmation of their second modified plan. Mr. Friesen's argument on this point is not

19  persuasive as grounds for dismissal.

20       Mr. Friesen argues for dismissal based on "bad faith" pursuant to § 707(b)(3).

21  This section applies only to cases in chapter 7 and has no application in this chapter 13.

22  See this court's recent ruling in *Kistler v. Cleveland (In re Cleveland)* __B.R.__ (2006

23  W.L. 3030161).

24       In chapter 13, bad faith is determined by analyzing the "totality of the

25  circumstances." Courts consider four principal factors in making this determination. The

26  four factors were set forth in *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224-25 (9th

27  Cir. 1999):

28  / / /

(1) whether the debtor "misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner";

(2) "the debtor's history of filings and dismissals";

(3) whether "the debtor only intended to defeat state court litigation"; and

(4) whether egregious behavior is present.

A finding of bad faith does not require fraudulent intent by the debtor. [N]either malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor illwill directed at creditors, or that debtor was affirmatively attempting to violate the law-malfeasance is not a prerequisite to bad faith.

(Citations omitted.)

The court is not persuaded that the Debtors materially misrepresented facts in their petition or unfairly manipulated the Bankruptcy Code in filing their petition. There is nothing in the Debtors' bankruptcy filing history which indicates abuse. There is no egregious behavior present.

Mr. Friesen contends that the Debtors acted in bad faith by refinancing their home shortly after the automobile accident and by recording a Declaration of Homestead to protect their home. Specifically, Mr. Friesen contends that they made a "net profit" of $88,500 by increasing their residential mortgage from $15,500 to $104,000. However, this simple mathematics does not tell the full story and it does not support an inference that the Debtors have acted in bad faith or with fraudulent intent for several reasons.

First, the court notes that the refinance took place more than one year before the bankruptcy was filed so the court is not persuaded that the Debtors refinanced their home to avoid any liability to Mr. Friesen, or in anticipation of filing a bankruptcy petition.[5]

---

[5]The court notes for the record that recent conditions in the local housing market have made residential refinancing and debt consolidation an economically beneficial and prudent alternative. In bankruptcy, mortgage refinancing has become a popular and common event over the past two years. This court is frequently asked to approve residential refinance transactions for debtors already in chapter 13 bankruptcy as a means to pay off their plans.

1  Second, the Debtors had a right to record a homestead declaration as a matter of law

2  under Cal.CodeCiv.P. 704.920.  Third, Mr. Friesen's reference to various documents

3  recorded in connection with the refinance, such as a substitution of trustee, reflects a

4  general misunderstanding of California's lien laws.  Fourth, there is no evidence in the

5  record to show that the refinance resulted in any cash being paid to the Debtors, as

6  opposed to other creditors.[6]

7       Mr. Friesen references § 548 in support of his argument on this point.  That Code

8  Section dealing with the trustee's avoiding powers states in pertinent part:

9       (a)(1) The trustee may avoid any transfer (including any transfer to or for the
        benefit of an insider under an employment contract) of an interest of the debtor in
10      property, or any obligation (including any obligation to or for the benefit of an
        insider under an employment contract) incurred by the debtor, that was made or
11      incurred on or within 2 years before the date of the filing of the petition, if the
        debtor voluntarily or involuntarily–
12
        (A) made such transfer or incurred such obligation with actual intent to
13      hinder, delay, or defraud any entity to which the debtor was or became, on
        or after the date that such transfer was made or such obligation was
14      incurred, indebted.

15      The first problem with Mr. Friesen's argument is that § 548 gives the *trustee* the

16  power to avoid certain transfers.  It does not apply to other parties in interest.  In addition,

17  in this case, the evidence offered by Mr. Friesen does not show that the Debtors

18  refinanced their house with the *actual* intent to hinder, delay, or defraud their creditors.

19  *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 805-6 (9th Cir. 1994).  Such a

20  determination would require an adversary proceeding, which the Trustee has not yet

21  commenced in this case.  Therefore, the court is again, not persuaded that the Debtors

22  made a fraudulent transfer by refinancing the debts against their home.

23      Arguably, this court could find that the Debtors filed their chapter 13 petition in

24

25      [6]Mr. Friesen lodged an exhibit to his Trial Brief (Exhibit "F"), which appears to be

26  an unauthenticated first page from the Borrower Final Closing Statement generated at the

27  conclusion of the refinance.  That document shows the payoff of two mortgages totaling
    in excess of $36,000 and the payment of at least one creditor in the amount of $3,877.

28  The Closing Statement does not show that any cash went to the Debtors.

1  bad faith if the record showed that they did so solely with the intent to defeat Mr.

2  Friesen's remedies in the State Court Litigation. The Ninth Circuit reviewed this issue in

3  *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440 (9th Cir. 1986). In that

4  case, the court found that the debtors filed for bankruptcy relief for the sole purpose of

5  rejecting a contract for the sale of their house. *Id.* at 1445. The buyer of the house had

6  sued the debtors in the state court for specific performance, and the debtors filed for

7  chapter 13 bankruptcy relief twice while that case was pending. *Id.* at 1441. In

8  *Chinichian*, the debtors' first chapter 13 case was dismissed because they did not appear

9  at their § 341(a) meeting. In the second case, the bankruptcy court rejected the debtors'

10  chapter 13 plan because it was filed for an improper purpose:

11  
12  > After reviewing the Chinichian plan *in toto*, the bankruptcy judge concluded that
   > the real purpose of the plan was to defeat the state court litigation and that such
   > purpose violated the "spirit of the chapter":

13  > The debtors in this case are not the poor, the oppressed and the unfortunate seeking
   > a fresh start. They own a home valued at $140,000 which is encumbered for
14  > $40,000 and upon which the payments are current. They also own four parcels of
   > desert acreage free and clear. They are not having difficulty in meeting their
15  > financial obligations. Instead, their purpose in-filing [sic] this Chapter 13 case is
   > solely to defeat the pending action for specific performance.
16  

17  *Id.* at 1445.

18      In *Chinichian*, the debtors attempted to use the equitable bankruptcy system solely

19  to frustrate the creditors' equitable remedies under state law. The facts and circumstances

20  are different here. There is no evidence that the Debtors filed bankruptcy for the sole

21  purpose of defeating Mr. Friesen's legal remedies under state law; specifically, his right

22  to a claim for damages and personal injury following the automobile accident. The

23  Debtors elected not to defend the State Court Litigation. The record supports the

24  conclusion that they filed this bankruptcy petition not to defeat the Friesen Claim, rather

25  to provide for the Friesen Claim through a chapter 13 plan - fairly and equitably to the

26  extent required by law on equal footing with their other creditors. The Debtors listed Mr.

27  Friesen in their schedules as an unsecured creditor and are not objecting to his Claim.

28      The court also notes that if the Debtors are not able to confirm a chapter 13 plan in

10

1  this case, they will be potentially eligible again for a chapter 7 discharge in August 2007.

2  There is no evidence to suggest that the Friesen Claim would not be dischargeable in a

3  chapter 7 proceeding. The record shows that the Debtors' liabilities exceed their assets.

4  The record also suggests that the Debtors are barely able to pay their debts as they come

5  due and their nonexempt assets total approximately $2,700. The Debtors' second

6  modified plan proposes to distribute 5% to unsecured creditors, which, if confirmed, will

7  pay approximately $25,000 to Mr. Friesen. It is quite probable that Mr. Friesen will

8  realize more through the Debtors' chapter 13 plan than if he pursued the State Court

9  Litigation, enforced his judgment under state law, and forced the Debtors back into

10  chapter 7 after August 2007.

11  **Objection to Exemptions.**

12      Mr. Friesen contends that the exemptions claimed by the Debtors were improper

13  and do not conform to the exemptions allowed under Bankruptcy Code § 522(d).

14  However, pursuant to § 522(b)(2), the State of California has opted-out of the federal

15  bankruptcy exemption scheme prescribed in § 522(d). See Cal.CodeCiv.P. § 703.140(a).

16  The Debtors' exemptions are claimed pursuant to the Cal.CodeCiv.P. § 704.010 et seq.

17  The Trustee did not object to their exemptions. The court has reviewed the Debtors'

18  exemptions and they appear to be proper.   Therefore, Mr. Friesen's Objection to

19  Exemptions will be overruled.

20  **Motion for Relief from Stay.**

21      Mr. Friesen moves for relief from stay to pursue the State Court Litigation to

22  completion. Section 362(d)(1) allows for relief from the automatic stay imposed by

23  § 362(a) for "cause." "Because there is no clear definition of what constitutes 'cause',

24  discretionary relief from the stay must be determined on a case by case basis."

25  *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir.1985).

26      In this case, granting relief from stay for Mr. Friesen to pursue the State Court

27  Litigation would serve no practical or beneficial purpose. Mr. Friesen filed a proof of

28  claim for the full amount of his alleged damages. The Debtors have not objected to his

1  claim and stated on the record that they do not intend to object after their chapter 13 plan

2  is confirmed.  Upon inquiry from the court, Mr. Friesen admitted that the trial court has

3  not yet made even a tentative ruling in the State Court Litigation and that he conceivably

4  could get nothing if the State Court Litigation were allowed to proceed.  There is no

5  evidence to suggest that Mr. Friesen would receive a judgment in the State Court

6  Litigation, or that such a judgment would exceed the amount of the Friesen Claim which

7  will be provided for in the Debtors' chapter 13 plan.[7]

8       There would be no benefit to Mr. Friesen or the Debtors to return to state court.

9  Due to the size of the Friesen Claim in relation to the other scheduled debts, it appears

10  that Mr. Friesen will receive substantially all of the money distributable through the

11  chapter 13 plan to unsecured creditors, regardless of what his claim may ultimately be

12  determined to be in the state court.  The cost of having to defend the State Court

13  Litigation would unquestionably drain cash resources from the estate - cash that could be

14  used to fund the chapter 13 plan.  Accordingly, Mr. Friesen has not shown cause for this

15  court to grant relief from stay to proceed with the State Court Litigation.  Mr. Friesen's

16  motion for relief from stay will be denied.

17  **Miscellaneous Arguments Raised by Mr. Friesen.**

18       Mr. Friesen argues that the Debtors's case must be dismissed based on § 523.

19  Section 523 relates to the dischargeablity of certain kinds of debts.  Section 523 does not

20  apply to dismissal.  Accordingly, Mr. Friesen's arguments under § 523 are not applicable

21  here.

22       Mr. Friesen argues that, pursuant to § 521(a)(1)(B)(iv), the Debtors were required

23  to file copies of payment advices received from the Debtors' employer(s) for the 60-day

24  period before the filing of the petition.  In addition, Mr. Friesen argues that § 521(i)(1)

25

26  _____

27       [7]The Debtors have proposed a second modified plan which would pay a 5%
     dividend to unsecured creditors.  Completion of the second modified plan would result in
28  a payout of approximately $25,000 to Mr. Friesen.

1    mandates automatic dismissal for failure to provide such payment advices. However,

2    section 521(a)(1)(B) is qualified by the term "unless the court orders otherwise." In the

3    U.S. Bankruptcy Court for the Eastern District of California, General Order 05-05

4    provides that the Debtors' payroll information shall *not be filed with the court*, but rather

5    provided to the *trustee* not later than seven days before the first date set for the meeting of

6    creditors. The Trustee has stated on the record that he received all of the payroll

7    information he had requested from the Debtors. Therefore, the automatic dismissal

8    provision of section 521(i)(1) is not applicable in this court with regard to payroll

9    information and Mr. Friesen's argument on this point is without merit.

10         Mr. Friesen argues that, pursuant to §§1307(e) and 1308(a), the Debtors were

11    required to file proof of tax returns for the four-year period preceding the date of the

12    petition. However, Mr. Friesen misunderstands these sections. Section 1308(a) requires

13    the Debtors to file tax returns with "appropriate tax authorities," not later than the day

14    before the § 341(a) meeting of creditors. The Trustee is authorized to continue the

15    § 341(a) meeting to allow the filing of tax returns (§ 1308(b)(1)) and § 1307(e) permits

16    but does not require dismissal if the tax returns are not filed. Here, there is no evidence in

17    the record to show that the Debtors have not filed their state and federal tax returns with

18    the "tax authorities." Indeed, Mr. Friesen objected earlier to the fact that the Debtors

19    have already received and spent their 2005 income tax refund. The Internal Revenue

20    Service and Franchise Tax Board have not filed proofs of claim for unpaid taxes.

21    Therefore, this argument is based on a misconception and is not valid.

22         Mr. Friesen argues in his Dismissal Motion that the Debtors' first modified plan

23    does not utilize all of the Debtors' "projected disposable income" pursuant to

24    § 1325(b)(1)(B). This argument really addresses confirmation of the Debtors' plan and

25    has no application here. Debtors withdrew their first modified plan and have filed a

26    second modified plan. Mr. Friesen's objection to confirmation of the second modified

27    plan will be considered separately. The "projected disposable income" test is not grounds

28    for dismissal of the case.

13

Mr. Friesen argues that, pursuant to § 1324(b), the Debtors were required to have a confirmed plan within 45 days of the § 341(a) meeting of creditors. Section 1324(b) does not require that a plan be confirmed by such date. Section 1324(b) requires that a *hearing* on plan confirmation be held by such date. The § 341 meeting was held on June 13. The hearing on confirmation of the Debtor's first modified plan was held 42 days later on July 25. Therefore, a hearing on plan confirmation was held within 45 days of the § 341(a) meeting. Mr. Friesen's argument is without merit.

Finally, Mr. Friesen makes arguments predicated on §§1112(b) and 1141(d)(5)(c) regarding, *inter alia*, the Debtors' alleged failure to carry automobile insurance. Such sections apply only to chapter 11 cases. Therefore, they are not applicable here.

**Conclusion.**

In conclusion, the court certainly understands Mr. Friesen's anger and frustration at having his Claim subjected to the provisions of the Bankruptcy Code. However, every honest debtor facing overwhelming economic hardship is entitled to a "fresh start" under federal law. On the evidence presented, the court is not persuaded that the Debtors have filed their petition in bad faith, that they have hidden assets, or that they have been dishonest in the preparation of their schedules and their claim of exemptions. Accordingly, Mr. Friesen's Dismissal Motion and his Relief from Stay Motion will be denied without prejudice. Mr. Friesen's Objection to Exemptions will be overruled.

Dated: November _____, 2006

W. Richard Lee
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING


        The undersigned deputy clerk in the office of the United
States Bankruptcy Court for the Eastern District of California
hereby certifies that a copy of the document to which this
certificate is attached was mailed today to the following
entities listed at the address shown on the attached list or
shown below.




SEE ATTACHED LIST




DATED: 11/08/06          By: _Willm Murton_____
                                    Deputy Clerk


EDC 3-070 (New 4/21/00)

Peter Bunting
2501 W Shaw Ave #119
Fresno, CA 93711

Ralph Friesen
2726 E Washington Ave
Fresno, CA 93701-2443

Aurelio Barajas
4048 E Butler Ave
Fresno, CA 93702

Celia Rodriguez
4048 E Butler Ave
Fresno, CA 93702

M. Enmark
3447 W Shaw Ave
Fresno, CA 93711

Office of the U.S. Trustee
2500 Tulare Street, Room 1401
Fresno, CA 93721